IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE CONSECO, INC., | ) |
| | ) No. 05 C 3170 |
| ROLLIN DICK, as Trustee for the | ) |
| Amended Hilbert Resident Trust | ) Judge Robert W. Gettleman |
| and the Stephen C. and Tomisue Hilbert | ) |
| Irrevocable Trust, | ) |
| | ) Appeal from |
| | ) No. 02 B 49672 |
| Appellant. | ) Bankruptcy Judge Carol A. Doyle |
| | ) |

## MEMORANDUM OPINION AND ORDER

Appellant Rollin Dick ("Dick"), as trustee of the Amended Hilbert Resident Trust and the Stephen C. and Tomisue Hilbert Irrevocable Trust, has appealed from the bankruptcy court's grant of summary judgment in favor of the debtor, Conseco, Inc. ("Conseco"), arguing that the bankruptcy court erred in finding that: (1) the contracts at issue were not executory; (2) Conseco did not waive its rights under the contracts by failing to exercise its options in a reasonable time; and (3) Conseco's material breach of the contract prior to its bankruptcy does not preclude it from terminating that contract. For the reasons set forth below, the decision of the bankruptcy court is affirmed. This court has appellate jurisdiction under 28 U.S.C. § 158(a)(1).

## BACKGROUND

In 1998, Conseco's then-CEO Stephen Hilbert ("Hilbert") entered into four[1] nearly identical "spilt-dollar" agreements ("Agreements") with Conseco under which Conseco agreed to contribute premiums toward life insurance policies, worth between $12.5 million and $25 million each, for Hilbert and his wife. The Agreements are governed by Indiana law. Hilbert set up two

---

[1]There was a fifth split-dollar agreement covering Dick and his spouse. Dick also filed a claim against Conseco, but that claim has been resolved.

independent trusts, the Amended Hilbert Resident Trust and the Stephen C. and Tomisue Hilbert Irrevocable Trust ("Trusts"), as the owners and beneficiaries of the policies. Dick, Conseco's then-CFO, is the trustee of each policy. The Agreements state that they are an "employee benefit" for Hilbert, and that they were entered into due to Conseco's "desire to continue to retain [Hilbert's] services."

Under the Agreements, Conseco agreed to pay annual premiums towards Hilbert's life insurance policies. Hilbert was required to pay a portion of the policy premiums, in an amount to be determined by Conseco under applicable tax law. If Hilbert failed to pay his portion, the Trusts had the option of making a payment on his behalf. Each year Conseco determined the amount of annual premiums due under the life insurance policies and how these premiums should be split between Conseco and Hilbert in accordance with relevant tax law and in order to confer a tax benefit on Hilbert. Conseco collected the payment from Hilbert or the Trusts, and then forwarded the full amount to the insurance companies.

The policies were "second to die policies," meaning that the death benefits were not payable under the policies until both Hilbert and his wife were deceased. Upon their deaths, the insurer was to reimburse Conseco for its premium payments and pay the remaining policy proceeds to the Trust. The Agreements provided that, "[Conseco] and the [Trust] shall cooperate to take whatever action is necessary to collect the death benefit provided under the Policy," and that, "[Conseco] shall have the unqualified right to receive a portion of such death benefit equal to the total amount of the premiums paid by it." The "sole right" of Conseco was "to be repaid the amounts which it had paid toward the premiums on the Policy." Conseco had "no incidents

of ownership," but obtained a collateral assignment of each policy from the Trusts to ensure that it would receive reimbursement for its premium payments.

The Agreements also contained early termination provisions stating that they would terminate if Conseco went bankrupt, or if Hilbert or the Trust failed to pay Conseco a share of the premiums. Upon termination of each Agreement, the relevant Trust had the option of repurchasing the policy from Conseco, and thus releasing the collateral assignment, by reimbursing Conseco for its premium payments. If, within 60 days, the owner did not exercise this option to purchase the policy, Conseco had the choice of either becoming the owner of the policy or surrendering the policy and taking reimbursement from the proceeds.

In December 2001, Conseco stopped making payments on the insurance policies. According to Conseco, it believed Hilbert potentially owed Conseco millions of dollars under the Conseco Director and Officer Loan Program. According to the Trusts, after Conseco stopped making payments the Trusts converted the policies into paid-up policies with lower death benefits so that no further payments were due.

On December 17, 2002, Conseco filed for Chapter 11 relief under the Bankruptcy Code. On September 9, 2003, the bankruptcy court confirmed a plan of reorganization, effective September 10, 2003. Neither Hilbert nor the Trusts exercised their option to purchase the policies from Conseco within 60 days of the bankruptcy filing. Instead, the Trusts timely filed two claims against Conseco in February 2003 seeking damages for alleged breach of the Agreements. The Trusts assert in the proofs of claims that Conseco's bankruptcy filing did not terminate the Agreements. Conseco objected to the claims, and the parties filed cross-motions for summary judgment.

In September 2004, Conseco's counsel wrote counsel for the Trusts that the bankruptcy terminated the Agreements and that Conseco intended to enforce its rights. The Trusts' counsel replied that the Trusts "would consider your taking of the cash value of the policies not only to be an additional breach of the [Agreements], but also to be conversion as well."

On January 26, 2005, the bankruptcy court held that it could not grant either party's motion for summary judgment because neither party sought the entrance of a final judgment. Instead, Judge Doyle treated the parties' motions as motions in limine. Judge Doyle held that the Agreements were not executory contracts within the meaning of 11 U.S.C. § 365[2], and therefore the Agreements automatically terminated when Conseco filed its bankruptcy petition in December 2002. Judge Doyle also held that because Conseco was not attempting to enforce a contract, its material breach of the Agreements in December 2001, when it stopped making premium payments, was of no consequence.

A few months later, Conseco filed a supplemental motion for summary judgment seeking to disallow the Trusts' claims. On April 13, 2005, the bankruptcy court granted Conseco's motion and disallowed the Trusts' claims. Judge Doyle affirmed her earlier finding that the Agreements were not executory, and held that there were no disputed issues of material fact whether the Trusts had any rights to the policies. The court found that because the Trusts failed to act within 60 days of the filing of the bankruptcy petition on December 17, 2002, which terminated the Agreements, "it is undisputed that the Trusts have no rights to the policies. Therefore, whether Conseco failed to pay

---

[2]Section 365(b) provides that "subject to the court's approval," a trustee may assume any executory contract of the debtor. If the court grants a trustee's petition pursuant to § 365(b), the contracting party has no choice; he must continue to perform under the terms of the contract with the debtor. Matter of Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1172 (7th Cir. 1996).

4

any premiums prior to that date did not cause any damage to the Trusts." On April 26, 2005, the Trusts filed a timely notice of appeal of Judge Doyle's rulings, and moved to stay the order pending appeal. On June 15, 2005, the bankruptcy court denied the Trusts' motion to stay. Shortly thereafter, Conseco made preparations to exercise its options under the Agreements.

## DISCUSSION

On appeal, the bankruptcy court's rulings and conclusions of law are reviewed de novo, Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994), and its findings of fact shall not be set aside unless they are clearly erroneous. Fed. R. Bankr. P. 8013; Hoseman v. Weinschneider, 322 F.3d 469, 473 (7th Cir. 2003).

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

I.    **Agreements not executory**

The Trusts argue that the bankruptcy court erred in finding that the Agreements were not executory. Executory contracts receive special treatment in bankruptcy. Under 11 U.S.C. § 365(a)

5

and (d)(2), a Chapter 11 debtor must generally either assume or reject an executory contract by the time of confirmation. The characterization of a contract as "executory" within the meaning of the Bankruptcy Code is a question of federal law. In re Wegner, 839 F.2d 533, 536 (9th Cir. 1988). The Bankruptcy Code "does not contain a precise definition of the term executory contract," In re Streets & Beard Farm Partnership, 882 F.2d 233, 235 (7th Cir. 1989), and the legislative history is sparse, In re Resource Technology Corp., 254 B.R. 215, 222 (N.D. Ill. 2000). In a 1973 law review article, Professor Vern Countryman defined an executory contract as one in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN. L. REV. 439, 460 (1973). Thus, as Judge Doyle noted in the instant case, "if any of the parties' duties is deemed immaterial, then the contract is deemed not executory."

Most courts, including the Seventh Circuit, have adopted Professor Countryman's "material breach" test. See, e.g., Matter of Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1172 n. 3 (7th Cir. 1996); In re Streets & Beard Farm P'ship, 882 F.2d 233, 235 (7th Cir. 1989); see also In re Bradlees Stores, Inc., 2001 WL 1112308, at *6 (S.D.N.Y. Sept. 20, 2001) (collecting cases). In the instant case, the parties do not dispute that the Countryman test applies. Rather, the Trusts assert that Judge Doyle failed to apply to Countryman test and applied the "functional test" instead. Alternatively, the Trusts argue that she applied Countryman incorrectly.

A minority of courts, treating the Countryman test as "helpful but not controlling," hold that the determination of whether a contract is "executory" requires a more "functional" approach, "with an eye towards furthering the policies of the Bankruptcy Code." In re La Electronica, Inc., 995 F.2d

320, 322 n. 3 (1st Cir. 1993) (collecting cases); see also In re Jolly, 574 F.2d 349 (6th Cir. 1978), cert. denied, 439 U.S. 929 (1978). Under this approach, whether a contract is executory is decided according to the impact that the answer would have on the bankruptcy case. In re Gen. Dev. Corp., 84 F.3d 1364, 1374 (11th Cir. 1996).

The Trusts' argument that Judge Doyle applied the functional test in reaching her January 26, 2005, ruling that the Agreements were not executory is unpersuasive. In support of their criticism of the bankruptcy court, the Trusts point to Judge Doyle's comment that, "[c]ourts have also described executory contracts in more practical terms as providing a potential benefit to the estate that can only be obtained at the cost of the debtor's future performance under the contract," as evidence that she applied the wrong test. The Trusts' tortured and selective misreading of this section of Judge Doyle's opinion is mistaken for at least two reasons. First, this portion of the analysis was clearly not determinative, but merely explanatory and in support of the holding that the Agreements are not executory under the Countryman test, which she cites explicitly. At most, Judge Doyle suggested that the result would be the same under either test.

Second, even in the section of her opinion highlighted by the Trusts, Judge Doyle did not employ the functional test from Jolly, which she did not cite, or cite to any other cases that employed the functional test. Indeed, the only other three cases cited by Judge Doyle in this portion of the analysis also employ the Countryman test and focus on unperformed obligations. See In re Columbia Gas Systems, 50 F.3d 233, 239 (3rd Cir. 1995) ("unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365"); Resource Technologies, 254 B.R. at 223 (applying Countryman); In re Sparks, 206 B.R. 481, 487 (N.D. Ill. 1997) (applying Countryman). Although Judge Doyle noted the lack of potential benefits

7

to the estate from the Agreements, she did not discuss what effect her finding that they are not executory would have on the bankruptcy estate, which is the gravamen of the functional test. Accordingly, the bankruptcy court applied the Countryman test adopted by the Seventh Circuit.

The Trusts argue that even if Judge Doyle applied the Countryman test, she reached the wrong result because material, unperformed obligations remained at the time of Conseco's bankruptcy, and thus the Agreements were executory. In support of their argument that material obligations remained, the Trusts point to the requirement that Conseco and Hilbert and/or the Trusts each pay a portion of the insurance policy premiums, and Conseco's obligation to cooperate in the eventual collection of death benefits.

The Seventh Circuit has held that under the Countryman test, the unperformed obligations must be material to render a contract executory. "While almost all agreements to some degree involve unperformed obligation on either side, such an expansive definition of the term 'executory' is not what Congress enacted through its choice of language in § 365." Gouveia v. Tazbir, 37 F.3d 295, 298-99 (7th Cir. 1994) (internal citations omitted).[3] If the court finds that one party did not have unfulfilled material obligations, a contract is not executory. See In re Kmart Corp., 290 B.R. 614, 617 (N.D.Ill. 2003) ("Under Countryman, a contract that has been fully performed by either side is not executory."); American Network Leasing Corp. v. First Data Merchant Servs. Corp., 1997 WL 534827, at *9 (N.D.Ill. Aug. 21, 1997) (agreement "not executory" because it was "fully performed by one side.").

---

[3]The court notes that the Trusts cite In Re Walnut Assocs, 145 B.R. 489 (E.D.Pa. 1992), only in support of their argument that, "in the Seventh Circuit, 'the definition of an executory contract should be very broad.'" The Trusts neither acknowledge that they are citing a case from a foreign district nor address the Seventh Circuit's explicit narrowing of the definition.

8

In the instant case, the court agrees with Judge Doyle that because the unperformed obligations of Hilbert and/or the Trusts were not material, the Agreements were not executory. Hilbert's duty was to pay his share of the premiums, and the Trusts were obligated to make the payments if Hilbert did not. The Agreements provided that they terminated automatically if Hilbert's portion of the premiums was not paid, and Conseco could not compel Hilbert to pay premiums or sue Hilbert or the Trusts for material breach. This makes sense, as Conseco points out, because the Agreements provided life insurance for Hilbert, and Conseco "had no interest in continuing to make payments if Hilbert stopped making his." That is, the purpose of the mutual payments was to provide Hilbert with an employment benefit, of which Conseco had no incentive to force him to take advantage.

A material breach is one that "worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party." Morton v. Arlington Heights Fed. Sav. and Loan Ass'n, 838 F. Supp. 477, 482 (N.D.Ill. 1993). Hilbert's failure to pay his share of the premiums would not interfere with Conseco's stated purpose for entering the Agreements - to retain a valuable employee - and would not cause prejudice to Conseco. Accordingly, payments by the Trusts and/or Hilbert were not a material obligation, and Hilbert had no unperformed, material obligations at the time of the bankruptcy filing.

In addition to making payments in Hilbert's stead, the Trusts were also obligated to cooperate upon the deaths of the insureds. Contrary to the Trusts' argument, this obligation was ministerial only and not an unperformed, material obligation. Courts have routinely held that similar administrative obligations are not material and do not render a contract executory. See, e.g., Sparks, 206 B.R. at 488 (ex-spouse's remaining obligations to execute transfer documents not material); In

In the instant case, the court agrees with Judge Doyle that because the unperformed obligations of Hilbert and/or the Trusts were not material, the Agreements were not executory. Hilbert's duty was to pay his share of the premiums, and the Trusts were obligated to make the payments if Hilbert did not. The Agreements provided that they terminated automatically if Hilbert's portion of the premiums was not paid, and Conseco could not compel Hilbert to pay premiums or sue Hilbert or the Trusts for material breach. This makes sense, as Conseco points out, because the Agreements provided life insurance for Hilbert, and Conseco "had no interest in continuing to make payments if Hilbert stopped making his." That is, the purpose of the mutual payments was to provide Hilbert with an employment benefit, of which Conseco had no incentive to force him to take advantage.

A material breach is one that "worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party." Morton v. Arlington Heights Fed. Sav. and Loan Ass'n, 838 F. Supp. 477, 482 (N.D.Ill. 1993). Hilbert's failure to pay his share of the premiums would not interfere with Conseco's stated purpose for entering the Agreements - to retain a valuable employee - and would not cause prejudice to Conseco. Accordingly, payments by the Trusts and/or Hilbert were not a material obligation, and Hilbert had no unperformed, material obligations at the time of the bankruptcy filing.

In addition to making payments in Hilbert's stead, the Trusts were also obligated to cooperate upon the deaths of the insureds. Contrary to the Trusts' argument, this obligation was ministerial only and not an unperformed, material obligation. Courts have routinely held that similar administrative obligations are not material and do not render a contract executory. See, e.g., Sparks, 206 B.R. at 488 (ex-spouse's remaining obligations to execute transfer documents not material); In

re Fitch, 174 B.R. 96, 102 (S.D.Ill. 1994) (contract for sale of real estate with installment payments was non-executory because seller's only remaining obligation, to deliver good title, was not material). The Agreements did not enumerate any specific duties that the Trusts must perform and, as Judge Doyle noted, it is likely that proof of death is all that would be required to collect the benefits. As in Sparks, even though this obligation was necessary to carry out the intent of the agreement, it was purely administrative and not material. 206 B.R. at 488.

The Trusts cite two cases from foreign district courts in support of their argument that the obligations of Hilbert and the Trusts were material, but both cases are distinguishable. In In Re Walnut Assocs, 145 B.R. 489, 495-96 (E.D.Pa. 1992), the Pennsylvania district court applied the Third Circuit's standard that the definition of an executory contract should be "very broad," in finding that both the debtor and the non-debtor had unperformed material obligations under a settlement agreement. This definition is contrary to the Seventh Circuit's narrower view, as expressed in Gouveia, 37 F.3d at 298-99. In addition, the contract at issue in Walnut Assocs., unlike the instant case, did not contain a provision for early termination if one party failed to pay. In In re Farmland Indus., Inc., 294 B.R. 903, 923 (W.D.Mo 2003), the court determined that the non-debtor's obligations not to disclose confidential information, not to compete, and to assist the debtor-company in evaluating claims were material obligations. In the instant case, the Trusts were required to "cooperate" only, and the Trusts fail to establish that such cooperation is more than merely administrative or ministerial. The Trusts fail to respond meaningfully to the most important argument in Conseco's response, that the unperformed obligations of the Trusts and/or Hilbert were not material. Instead, the Trusts merely repeat their citations to Walnut Assocs. and Farmland Indus., without further elaboration or explanation. Accordingly, the court finds that Hilbert and/or

10

the Trusts did not have any material, unperformed obligations at the time of the bankruptcy filing.[4]

Because the court finds that Hilbert and the Trusts did not have material, unperformed obligations, the court need not address the Trusts' argument that Conseco's obligation to make its share of the payments was material. See Kmart Corp., 290 B.R. at 617.

Accordingly, the court affirms the bankruptcy court's finding that the Agreements are not executory.

## II.  Issues of fact

The Trusts assert that "issues of material fact" exist regarding whether Conseco waived its rights to enforce the Agreements, whether Conseco's breach of the Agreements before filing the bankruptcy petition bars it from enforcing the Agreements, and whether the Agreements were executory. These arguments, however, present questions of law, not questions of fact. In any event, for the reasons discussed below, the court affirms the bankruptcy court's holdings that Conseco did not waive its rights, that the material breach is of no consequence because Conseco is not attempting to enforce the Agreements, and that there are no disputed issues of material fact regarding damages to the Trusts arising from Conseco's failure to pay its portion of the premiums for 2001.

The Trusts argue that Conseco waived its right to take or liquidate the insurance policies because it failed to act within a reasonable time period after the end of the Trusts' sixty day window to exercise their options under the Agreements. The Agreements do not place a time limit on Conseco. To date, Conseco has not exercised either option. Under Indiana law, which governs the

---

[4]The Trusts argue that insurance policies are typically considered to be executory contracts. See, e.g., In re Green, 241 B.R. 187 (N.D.Ill. 1999). As Judge Doyle noted, however, "[t]he agreements at issue are not insurance contracts," but merely obligated Conseco to make certain payments on behalf an employee. Thus, the insurance policy case law does not apply here.

11

Agreements, if a contract does not contain a definite statement of time regarding when a right or option must be exercised, there is a presumption that the option or right must be exercised within a reasonable period of time. See Bond v. Peabody Cole Co., 450 N.E.2d 542, 549 (Ind. Ct. App. 1983). "What constitutes a reasonable period of time depends on the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract." Epperly v. Johnson, 724 N.E.2d 1066, 1072 (Ind. Ct. App. 2000).

Judge Doyle concluded that Conseco's silence did not constitute a waiver of its rights because the Agreements do not impose a time limit on Conseco, and because Conseco was sensibly awaiting for the bankruptcy court's ruling before attempting to exercise its option. The court noted that, "the parties have been disputing whether the contracts terminated upon Conseco's bankruptcy filing for several years, and the court is not willing to find waiver in these circumstances." Indeed, the Trusts have consistently denied in litigation and in correspondence with Conseco that Conseco had any right to exercise its options, and threatened to sue Conseco for breach of contract and conversion if it attempted to exercise those rights. The court agrees with Judge Doyle that in the face of hotly contested bankruptcy proceedings and the threat of additional litigation, Conseco did not waive its right to enforce its options under the Agreements.

The Trusts also argue that Conseco cannot enforce the Agreements because it breached them by failing to pay premiums before it filed for bankruptcy in December 2002. The Trusts' argument is nonsensical because Conseco is not attempting to enforce the Agreements or claiming that Hilbert or the Trusts subsequently breached the Agreements. The Trusts' citations of cases such as Licocci v. Cardinal Assoc., Inc., 492 N.E.2d 48, 52 (Ind. Ct. App. 1986), noting that "[a] party first guilty of a material breach may not maintain an action against the other party," are thus not relevant here.

In the instant proceedings, Conseco is merely defending itself by arguing that the remedy sought by the Trusts in their proof of claims is barred under the Agreements. Accordingly, the court agrees with Judge Doyle that Conseco's material breach of the Agreements prior to the bankruptcy is of no consequence here.

The Trusts' only remaining purported disputed fact is "what the paid-up insurance benefits and cash value of the policies would have been if Conseco had not breached the Agreements in 2001." As discussed above, Conseco is entitled to the policies because they terminated upon the bankruptcy filing and the Trusts did not exercise their option to repurchase the policies, and Conseco was entitled to be repaid for the premiums it contributed while the Agreements were in effect. The bankruptcy court held that the Trusts did not argue or present evidence that the cash value exceeds to amount of premiums paid by Conesco, and thus "failed to establish a valid claim against Conseco." The Trusts have also failed to make any such argument in support of the instant motion, in which they again bear the burden of producing some evidence of disputed issues of fact, or even to suggest that the current value of the policies exceeds the premium repayments owed to Conseco. Accordingly, the Trusts have failed to create a triable issue of fact whether they were damaged by Conseco's failure to pay its portion of the premiums in 2001.

## CONCLUSION

For the reasons stated above, the court affirms the bankruptcy court's grant of summary judgment in favor of Conseco.

ENTER:    October 18, 2005

                                             _____
                                             Robert W. Gettleman
                                             United States District Judge